VENTUR GROUP, LLC, Respondent, v DIANE FINNERTY et al., Appellants. [892 NYS2d 69]—

After engaging in almost a year of discussions, plaintiff entered into a purchase agreement to acquire the assets of two investment advisory firms (Wealth Management and Asset Management), which were owned by defendant Finnerty. Under the agreement, these assets consisted of management agreements with clients, which could not be assigned without consent. It further provided that "there can be no assurance that Client Consent can or will be obtained with respect to any Management Agreement or any particular number of Management Agreements," and no adjustment to the purchase price would be made as a result of failure to obtain client consent.

For purposes of the appeal, defendants do not dispute that Finnerty knowingly misrepresented that she had the primary relationship with—and "owned"—the clients of Wealth Management, when in fact those clients had been brought to the firm by an employee, George Graf, who had developed the client relationships over a period of more than 20 years. Plaintiff fur-

ther alleges that Finnerty misrepresented Graf's importance to the business, and that even though plaintiff had requested a meeting with him, Finnerty refused to schedule one until after the agreement was executed. Shortly after that meeting, Graf resigned from Wealth Management and solicited his clients, 80% of whom left with him.

In order to prevail on a claim for common-law fraudulent inducement, a plaintiff must establish "the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury" (*Braddock v Braddock*, 60 AD3d 84, 86 [2009]). Defendants do not challenge the motion court's conclusion that the alleged misrepresentations are collateral to the contract, and thus the fraud claim is not barred by the merger clause in the agreement. Instead, they contend that the claim fails because plaintiff cannot demonstrate justifiable reliance. Although the issue of justifiable reliance is generally a question of fact that is not amenable to summary resolution (*see Brunetti v Musallam*, 11 AD3d 280, 281 [2004]), we have held that "[a]s a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it" (*UST Private Equity Invs. Fund v Salomon Smith Barney*, 288 AD2d 87, 88 [2001]).

Here, even though its ability to review client agreements was limited due to securities regulations governing confidentiality, plaintiff, a financial advisor represented by counsel, proceeded without asking to see any employment contracts or speaking to Graf, who was designated in the agreement as a "key employee" and had not insisted on including protective provisions therein. Having failed to make any effort to verify Finnerty's representations concerning her client relationships and Graf's role in the business, plaintiff cannot demonstrate justifiable reliance on the misrepresentations (*see Valassis Communications v Weimer*, 304 AD2d 448 [2003], *appeal dismissed* 2 NY3d 794 [2004]; *Stuart Lipsky, P.C. v Price*, 215 AD2d 102, 103 [1995]).

Moreover, plaintiff has not shown evidence sufficient to raise an issue of fact as to whether Finnerty breached her obligation to use best efforts to obtain consents from the Wealth Management clients, or that any particular client was lost as a result of such breach (*see Lexington 360 Assoc. v First Union Natl. Bank of N. Carolina*, 234 AD2d 187, 191-192 [1996]). More likely, any loss of clients was a result of plaintiff's lack of relationship with

them. Concur—Sweeny, J.P., Catterson, Renwick, Freedman and Abdus-Salaam, JJ.