OPINION OF THE COURT
Bernard J. Fried, J.
This action is based on an allegedly void commercial lease. Plaintiff, a commercial tenant, seeks declaratory and injunctive relief and damages based on alleged violations of the rule against perpetuities. (EPTL 9-1.1 [b].) The defendant, a commercial landlord, has moved for partial summary judgment dismissing the complaint, and also seeks affirmative relief, motion sequence No. 001. (CPLR 3212.) Plaintiff has cross-moved for summary judgment. After plaintiff filed an amended complaint, defendant filed an amended notice of motion in which it seeks to dismiss a new claim, for fraudulent inducement, set forth in plaintiffs amended complaint. (CPLR 3211.)
Plaintiffs original complaint alleged four causes of action, including a claim to void the parties’ lease, claims for injunctions against the landlord’s drawdown on a letter of credit and its continued construction work on the subject premises, and a claim for conversion based on the defendant’s alleged refusal to return the letter of credit after a demand. After defendant moved for partial summary judgment, plaintiff filed an amended complaint which added a claim for fraudulent inducement.
At the argument on the cross motions for summary judgment, the parties stipulated that the defendant’s motion to dismiss the new claim for fraudulent inducement would be considered separately from the motions for summary judgment. (Transcript, Sept. 10, 2009, at 10.) I addressed the procedural effect of plaintiffs amended complaint on defendant’s counterclaim for anticipatory repudiation, which had not been answered by *955 plaintiff as of the date of the argument, and held that defendant’s counterclaim will not be considered in connection with the current motions for summary judgment or for dismissal. Plaintiff was directed to either file an amended answer responding to the counterclaim for anticipatory repudiation or file a separate motion to dismiss. (Tr at 14.)
A movant’s burden on a motion for summary judgment is to establish that there are no material issues of fact. (Zuckerman v City of New York, 49 NY2d 557 [1980].) Once a movant has met this burden, the party opposing the motion must come forward with proof of the existence of a triable issue. (Indig v Finkelstein, 23 NY2d 728 [1968].)
In support of its motion for partial summary judgment, defendant alleges the following relevant facts: defendant 53rd and Madison Tower Development LLC (landlord) is a Delaware limited liability company authorized to do business in New York, with an office at Macklowe Properties, 767 Fifth Avenue, New York, New York 10153. Plaintiff Tourneau, LLC is also a Delaware limited liability company, which actively conducts business in New York, with offices located at 3 East 54th Street, New York, New York 10022. Tourneau is a well-known international retailer of high-end watches and related jewelry, with four prominent retail locations in Manhattan alone.
Landlord and Tourneau entered into a written lease, dated July 9, 2008, whereby .the landlord leased to Tourneau a portion of the ground floor (the premises) in a commercial office building located at the southwest corner of Madison Avenue and 53rd Street in New York City (the Building). The premises consisted of a corner store to be used as a retail establishment.
The lease provided that the landlord would perform certain specific work, defined as “Owner’s Initial Work,” to prepare the premises so that Tourneau could build out its own interior selling space, known as “Initial Tenant Work.” The lease further provided that upon substantial completion of the Owner’s Initial Work, and appropriate notification by landlord to Tourneau, the lease term of occupancy would commence. This date was known as the “Commencement Date.” The determination of the Commencement Date would trigger a determination of the rent commencement date and the expiration date of the lease.
Under, the lease, the landlord had an express obligation to cause the substantial completion date to occur on or prior to January 31, 2009. The lease also imposed an outside deadline of December 31, 2009 for completion of the Owner’s Initial Work. *956 (Lease § 40 [e] [i].) The lease provided Tourneau with two remedies in the event of the landlord’s default, one being a day-today rent abatement upon the landlord’s failure to comply with the January 31, 2009 substantial completion date, and the other being a right to cancel the lease if the landlord failed to meet the outside deadline for completion of its work. These provisions, contained in a rider to the lease, were additional to the provision in the form lease which stated that “the validity of the lease shall not be impaired” in the event of the landlord’s failure to deliver possession. (Lease § 23.)
The landlord claims that it had been proceeding diligently to construct the new building, and had anticipated the substantial completion of Owner’s Initial Work as of January 31, 2009, as well as Tourneau’s timely completion of its build-out work. Landlord was still engaged in its work on February 9, 2009 when the Building suffered some minor fire damage. On March 19, 2009, the landlord informed Tourneau of these circumstances and the impact that fire would have on the substantial completion date by letter:
“By notice dated December 29, 2008, we advised you that Landlord reasonably anticipated substantially completing Owner’s Initial Work on January 31, 2009 . . . Notwithstanding that reasonable anticipation, Landlord was still in the course of substantial completion of the pertinent work when, on the evening of February 9, 2009, a fire, which started apparently in a contractor’s construction shed on the Building’s 2nd floor, caused some damage to some parts of the Building — which Landlord expects to remediate promptly . . . We will advise you in due course of the Substantial Completion Date (see § 57(b)) . . . Lastly, please be advised that the period beginning February 10, 2009, and continuing through today (and expected to continue for a period that Landlord is working to, but cannot now, ascertain) constitutes a period of Force Majeure Delay under Lease § 40(e)(iii); and so the Delivery Cancellation Date [see Lease § 40(e) (iii)] is extended on a day-by-day basis for this period. (While no notice of Force Majeure Delay is required under the Lease, we intend to give you further notice as to the date when this time-delay period has ended).” (Affirmation of Jarred I. Kassenoff, dated June 1, 2009, exhibit B.)
*957 Tourneau responded to the landlord, by letter dated March 25, 2009, as follows:
“While Tenant disputes the position taken by Landlord in the March 19 Letter, because the Lease is void and without further force or effect, we believe it is unnecessary to address Landlord’s allegation at this time ... In reviewing the parties’ Lease, it is readily apparent that the Lease does not provide, with any certainty, when the Commencement Date occurs. Because the ‘Substantial Completion Date’ may or may not occur within twenty-one (21) years of the date of the Lease, there is no definitive Commencement Date. Based on the foregoing, we are of the opinion that the Lease is void and of no further force or effect under the Rule Against Perpetuities, as a matter of law, and we hereby demand that Landlord immediately return Tenant’s letter of credit.” (Id., exhibit C.)
The landlord responded to Tourneau by letter dated April 1, 2009. In its response, the landlord pointed out that counsel for Tourneau was seemingly unequivocal about the violation of the rule against perpetuities in some places and less definite in others, referencing both the provision of the rule relevant to restraints on alienation and the rule applicable to remove vesting.
“Accordingly, we write to you for clarification in this regard. Unless the letter is withdrawn, completely and unequivocally, by you, by a writing delivered to us on or before close of business on April 7, 2009, then please be advised that we will understand this letter, as thereby adopted by you, to constitute an unequivocal statement by you . . . that you will be refusing to ever accept delivery of the premises referenced in the Lease, whether or not we now proceed to complete the Owner’s Initial Work referenced in the Lease.” (Id., exhibit D.)
On April 7, 2009, Tourneau responded that, in agreement with its counsel, it considered the lease to be void.
In support of the present motion, the landlord claims that this action, and specifically Tourneau’s claim that the lease violates the rule against perpetuities, is a subterfuge designed to avoid Tourneau’s otherwise enforceable obligations. The landlord seeks dismissal of all claims in the complaint which turn on this theory of liability.
*958 Plaintiffs first cause of action alleges that the lease fails to include a provision for determining the Commencement Date of the lease or the date when plaintiffs leasehold interest will definitively vest. In fact, alleges plaintiff, its leasehold interest may never vest, a clear violation of EPTL 9-1.1 (b) which states, in relevant part, “No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved.”
In order for the lease to be valid, alleges Tourneau, the perpetuities issue must be determinable as of the date the lease is executed. Here, alleges plaintiff, the Commencement Date is defined in the lease as the date on which the landlord delivers possession of the premises to Tourneau and the substantial completion date has occurred. In section 57 (b) (i) of the lease, the substantial completion date is defined as the date on which all of the Owner’s Initial Work has been substantially completed. However, plaintiff alleges that reading these two sections of the lease together, it cannot be determined when the Commencement Date under the lease will definitively occur,. or when its leasehold interest will vest. Tourneau claims that this ambiguity on the face of the lease is a clear violation of the rule against perpetuities, rendering the lease null and void. Further, since the lease did not grant Tourneau a right to demand specific performance, it argues that its right to take possession never fully vests within the perpetuities period, constituting an unreasonable restraint on alienation.
While Tourneau asserts that the lease is void on its face, landlord argues that EPTL 9-1.3 creates a presumption in favor of “saving” agreements by applying a presumption that a reasonable time limit of less than 21 years should be implied, unless a contrary intention appears.
Assuming that the rule against perpetuities is applicable to the present circumstances, the lease is not invalid on its face, and does not constitute an unreasonable restraint on alienation. The inclusion of specific times for the landlord’s performance of the Owner’s Initial Work, with an outside date for performance, and express remedies for the tenant upon the landlord’s breach not only evinces an intent to comply with the rule against perpetuities, but exhibits clear, express compliance with that statute by requiring performance in far less than 21 years plus lives in being. Though Tourneau may be dissatisfied with the remedies afforded it for the landlord’s breach under the lease, the *959 lack of stronger remedies does not amount to an unreasonable restraint on alienation.
Tourneau has not pointed to any provision of the lease that demonstrates an intention contrary to the savings statute.
Landlord claims that the parties’ intent was that substantial completion of its predicate work, and commencement of the lease term, would occur sufficiently promptly so that Tourneau would not be a holdover when its lease was due to expire at its existing store location, one block south, from which it was relocating. Landlord offers evidence of Tourneau’s own construction plans and its communications through February 2009 as further proof of the parties’ intent to expeditiously turn possession over to Tourneau, with no evidence from Tourneau to establish a contrary intent.
At the heart of this dispute is a “commencement upon completion” clause in the parties’ lease agreement. Section 40 (a) (i) defines the commencement date of the lease as follows:
“The term of this lease shall commence on the date on which Owner delivers the Demised Premises to Tenant in Delivery Condition (as hereinafter defined) (such date being hereinafter referred to as the ‘Commencement Date’). For purposes of this lease, the term ‘Delivery Condition’ means that. . . (ii) the Substantial completion date (as such term is defined in Article 57 below) has occurred . . . Owner shall provide Tenant with at least thirty (30) days’ prior written notice of the date on which the Substantial completion date (hereinafter defined) has occurred or shall occur (the ‘Delivery Notice’). It is agreed that Owner may send the Delivery Notice prior to the Substantial completion date, provided that, Owner has a commercially reasonable and good faith basis to believe that Owner’s Initial Work will be substantially complete on or prior to the date specified by Owner as the Substantial completion dáte in the Delivery Notice.”
Section 40 (e) (i) and (ii) of the lease measure Tourneau’s remedies for the landlord’s failure to turn over possession from January 31, 2009, or, at the outside, December 31, 2009. The parties’ stated intent, and the obligation upon the landlord, was that the landlord “shall” achieve substantial completion within these very specific time frames, or face the remedies provided for Tourneau in the lease.
The historical purpose of the rule against perpetuities supports the conclusion here. Originally intended to protect the *960 public’s interest in the development of land from donative transfers among family members, in the commercial context the rule has been interpreted to promote commercial interests which only minimally affect alienability. (See Wildenstein & Co. v Wallis, 79 NY2d 641, 649-651 [1992].) Thus, the rule has been held not to encompass commercial arrangements which actually encourage the use and development of the land, where such development involves only minor impediments to alienability. (See Symphony Space v Pergola Props., 88 NY2d 466, 479 [1996].)
Tourneau has not cited any authority which holds that a “commencement upon completion” clause which includes specific dates for the owner’s substantial completion of its work violates the rule against perpetuities. (See Omath Holding Co. v City of New York, 149 AD2d 179 [1st Dept 1989].)
Rather, Tourneau relies on Bleecker St. Tenants Corp. v Bleeker Jones LLC (65 AD3d 240 [1st Dept 2009]) as support for its claim that the lease in issue here violates the statutory and common-law restraints against alienation. Bleecker Street involved a lease renewal option which was exercisable after the commercial lease had expired. Because a savings provision in the option clause allowed the renewal option to be exercised after the lease had expired, the court found that the option clause in the lease violated the rule against remote vesting. However, the clause did not violate either the statutory or the common-law rule against restraints on alienation, the branch of the rule which Tourneau is asserting in the present case. Bleecker Street recognized that while the option clause might create an indirect restraint on the sale of the building in issue, “nothing in the existing record addresses the effect the options may have on the building’s sales price, and accordingly there is no basis for finding any indirect restraint to be unreasonable.” (Id. at 247.)
The landlord has sustained its burden, as movant, of establishing that there are no triable issues of fact in connection with the first cause of action. Tourneau has failed to prove the existence of a material issue, requiring the grant of defendant’s summary judgment motion dismissing the first cause of action. The landlord has failed to sustain its burden of proving entitlement to judgment on the plaintiffs remaining claims. Tourneau’s cross motion seeking a declaration that the lease is void is denied, based on the foregoing discussion. Tourneau’s related application for an order directing the return of plaintiffs letter of credit, which turned on a finding that the lease was void on *961 its face, is denied, as is the claim for conversion of the funds secured by the letter of credit.
Defendant’s motion to dismiss the claim for fraudulent inducement is granted. In this claim, Tourneau alleges that the landlord and one of its agents, as developers, represented that the landlord had the financial resources to complete construction of the premises and to maintain and operate a first-class retail and office building. Defendant and its agent are alleged to have further represented that the Building was a “stand alone,” and would not be affected should defendant or its agent experience financial hardships in other buildings or other investments. Tourneau claims that these representations were made during negotiations for the lease in order to induce Tourneau to sign the lease. Tourneau further claims that it reasonably relied upon these representations when it executed the lease. Defendants do not have the financial resources to complete construction of the premises, complains Tourneau, or to operate or maintain a first-class retail and office building. Further, the Building’s construction, operation, and maintenance are being adversely affected by the financial hardships caused by other buildings owned or operated by defendant and its agent. Because of its reasonable reliance on defendant’s misrepresentations, Tourneau claims to have suffered damages.
The essential elements of a claim for fraudulent inducement are “the misrepresentation of a material fact, which was known by the defendant to be false and intended to be relied on when made, and that there was justifiable reliance and resulting injury.” (Braddock v Braddock, 60 AD3d 84, 86 [1st Dept 2009].)
“Although the issue of justifiable reliance is generally a question of fact that is not amenable to summary resolution ... we have held that ‘[a]s a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm’s length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it.’ ” (Ventur Group, LLC v Finnerty, 68 AD3d 638, 639 [1st Dept 2009] [citations omitted].)
In the absence of any allegations that Tourneau attempted to verify the representations by which it was allegedly misled during the negotiations for the lease, the claim for fraudulent inducement fails to adequately allege Tourneau’s justifiable reliance, as a matter of law, and must be dismissed.
*962 Accordingly, it is ordered that defendant’s motion for partial summary judgment is granted, and plaintiffs first cause of action is severed and dismissed; and it is further ordered that plaintiffs cross motion for summary judgment is denied; and it is further ordered that defendant’s motion to dismiss the plaintiffs fifth cause of action for fraudulent inducement is granted, and the fifth cause of action is hereby severed and dismissed.