Skyview Capital, LLC v Conduent Business Servs., LLC (2025 NY Slip Op 03291)

Skyview Capital, LLC v Conduent Business Servs., LLC

2025 NY Slip Op 03291

Decided on June 03, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 03, 2025

Before: Manzanet-Daniels, J.P., González, Mendez, Pitt-Burke, Rosado, JJ. 

Index No. 650761/20|Appeal No. 4507|Case No. 2024-00327|

[*1]Skyview Capital, LLC, et al., Plaintiffs/Counterclaim Defendants-Respondents-Appellants,
v
Conduent Business Services, LLC, Defendant/Counterclaim Plaintiff-Appellant-Respondent.

Wilson Sonsini Goodrich & Rosati, P.C., Los Angeles, CA (Fred A. Rowley, Jr. of the bar of the State of California, admitted pro hac vice, of counsel), for appellant-respondent.
Troutman Pepper Hamilton Sanders LLP, Philadelphia, PA (Matthew H. Adler of the bar of the State of New Jersey and Commonwealth of Pennsylvania, admitted pro hac vice, of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about December 8, 2023, which, insofar as appealed from, granted in part and denied in part the motion of defendant/counterclaim plaintiff Conduent Business Services, LLC for summary judgment and granted the motion of plaintiffs/counterclaim defendants Skyview Capital, LLC and Continuum Global Solutions, LLC and counterclaim defendant Continuum Global Solutions Ltd. (collectively, Skyview) for partial summary judgment, unanimously modified, on the law, to grant Conduent's motion for summary judgment dismissing Skyview's fraud claim and request for punitive damages and declaring that the setoff limit under the promissory notes is $5 million, deny Conduent's motion as to its third counterclaim and remand for a hearing on that claim, deny Skyview's motion for partial summary judgment, and otherwise affirmed, without costs.
This action arises from Conduent's sale to Skyview of certain assets, namely, customer care call centers and customer care contracts, called "Liberty."
Skyview's fraud claims based on Conduent's failure to disclose reductions in force (RIFs) of recruiters and nonparty Sprint's change of plan concerning repatriating 150 jobs are duplicative of its contract claims (see e.g. Panwest NCA2 Holdings LLC v Rockland NCA2 Holdings, LLC, 205 AD3d 551, 551-552 [1st Dept 2022]).
Skyview's fraud claim asserting that Conduent should have disclosed the Q3 reforecast, while not duplicative of the contract claims, should have been dismissed. The July 2018 management presentation, sent to Skyview from Conduent's investment banker, said that Conduent had no duty to update it. In addition, both the initial asset purchase agreement (initial APA) and amended asset purchase agreement (APA) state Skyview "ha[d] made its own evaluation of the adequacy and accuracy of all estimates, projections, [and] forecasts furnished" to it. These disclaimers are specific enough to bar Skyview's fraud claim (see e.g. HSH Nordbank AG v UBS AG, 95 AD3d 185, 201 [1st Dept 2012]; see also Permasteelisa, S.p.A. v Lincolnshire Mgt., Inc., 16 AD3d 352, 352 [1st Dept 2005]).
In addition, Skyview, a sophisticated party, cannot show justifiable reliance on misrepresentations, as it "failed to make use of the means of verification that were available to it" (Ventur Group, LLC v Finnerty, 68 AD3d 638, 639 [1st Dept 2009] [internal quotation marks omitted]; see also Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 100 [1st Dept 2006], lv denied 8 NY3d 804 [2007]). Under the initial APA, Skyview had access to Conduent's books and records from September 28, 2018 until February 1, 2019. It could have tested the prediction of $461 million in revenue for 2018 against such books and records. Furthermore, on October 16, 2018, Conduent sent Skyview a forecast of $439.4 million for 2018, which is much lower than the $461 million forecast (and also lower than the Q3 reforecast of $446 million).
Sprint's plans were [*2]not peculiarly within Conduent's knowledge; Skyview could have inquired with Sprint about its repatriation plans (see LMM Capital Partners, LLC v Mill Point Capital, LLC, 224 AD3d 504, 505, 508 [1st Dept 2024] [the plaintiff could have directly contacted the customers of the business it wanted to acquire]). In fact, Conduent and Skyview met with Sprint months before Skyview signed the final APA.
Because we are dismissing Skyview's fraud claim, its request for punitive damage is also dismissed, as there is no indication that Conduent's conduct was aimed at the public generally (see e.g. Rocanova v Equitable Life Assur. Socy. Of U.S., 83 NY2d 603, 613 [1994]).
In light of the dismissal of Skyview's fraud claim, Conduent is entitled to partial summary judgment on its first and second counterclaims to the extent of declaring that the maximum Skyview can set off against its liability on the promissory notes is $5 million (the limit set forth in the APA).
The court properly denied Conduent's motion for summary judgment dismissing Skyview's contract claims, but it also should have denied Skyview's motion for partial summary judgment on so much of its contract claim as dealt with Ordinary Course of Business. Conduent correctly notes that "[s]omething which is done as a matter of corporate historical practice is, as a matter of law, done 'in the ordinary course of business''' (Unisys Corp. v Hercules Inc., 224 AD2d 365, 368 [1st Dept 1996]). Conduent submitted evidence that RIFs of recruiters had occurred before and that its advertising budget had been "stalled" before. However, Skyview points out that Ordinary Course of Business is a defined term. Therefore, it contends, it is not sufficient that RIFs occurred at Conduent before; rather, Conduent had to show that RIFs occurred specifically at Liberty.
While Liberty was not a pre-existing business, but rather a group of assets that Conduent carved out of its business, Skyview's contention nevertheless is textually grounded in the APA. Accordingly, Conduent did not establish prima facie entitlement to summary judgment dismissing Skyview's contract claims. On the other hand, because Liberty was part of Conduent, Conduent's evidence about company-wide RIFs and advertising raised issues of fact as to whether RIFs and reduction of advertising had previously occurred at Liberty.
As to the part of Skyview's contract claim dealing with Conduent's failure to give it prompt notice of Material Adverse Effects (MAEs), Conduent's motion was correctly denied, as the evidence submitted by the parties showed triable issues of fact. Conduent contends that its reduction of advertising and the number of recruiters, and the loss of the repatriated Sprint jobs, are not MAEs, because they fall within the exception to MAEs in that they are an "event, circumstance, [or] change . . . relating to or arising in connection with . . . the failure of Business to meet any projections, forecasts, guidance, estimates, milestones or [*3]budgets or predictions in revenue or earnings or other financial or operating metrics for any periods." However, the exception to the MAEs should not be read so broadly that it swallows up the definition of MAEs.
Based on the transcript of the oral argument on the parties' motions, which was incorporated into the written order on appeal, it seems that the court granted summary judgment to Conduent on its third through sixth counterclaims, not just on the fourth and fifth (involving the Transition Services Agreement [TSA]).
The court should not have granted Conduent summary judgment on its third counterclaim regarding the Jamaica Deferred Transfer. Section 1.7(e) of the APA says, "Payment of the net income or loss shall be due following the Deferred Transfer Date and within ten . . . Business Days after such amount has been agreed or finally determined." The amount due for the Jamaica Deferred Transfer has not been agreed to by the parties. Thus, the court should hold a hearing on the disputed amount (see CPLR 3212[c]).
Skyview's contention that Conduent's counterclaims concerning the TSA and Sublease Guarantees are unliquidated is unavailing. Skyview fails to show any dispute about the amounts owed under those agreements, as opposed to the Jamaica Deferred Transfer. Skyview's contention that it would be inequitable to make it pay on the counterclaims is also unavailing. Skyview was supposed to pay $25 million to Conduent for Liberty; to date, it has paid nothing. Meanwhile, it has been collecting revenue from Liberty's customers (including the ones related to the Jamaica business), while Conduent has had to pay all of the operating costs of that business.
We decline to consider the new arguments raised by Skyview in its reply brief on appeal.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 3, 2025